UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DAVID BONNER, #307427,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **NO. 3:23-cv-01231** |
| | ) |
| **CORE CIVICS OF AMERICA,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

David Bonner, a state inmate confined at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee,[1] has filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) ("Complaint"), and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2).

The case is before the Court for ruling on Plaintiff's IFP application and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, a prisoner bringing a civil action may apply for permission to file suit without prepaying the required filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

---

[1] The Court takes judicial notice that the online Tennessee Felony Offender Information Lookup, https://foil.app.tn.gov/foil/details.jsp (last visited January 4, 2024), reveals that Plaintiff's sentence ended on December 6, 2023. As of the date of this Order, Plaintiff has not notified the Court of any change in his address. See L.R. M.D. Tenn. 41.01(b) (requiring "a pro se plaintiff to timely notify the Court and opposing parties of any change in address" or face dismissal).

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. Id. § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. Id. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the

Court reviews for whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff alleges that, between June 5 and 7, 2023, he was sexually assaulted twice by his cellmate. He claims that he reported a PREA[2] violation "to staff" after the first assault on June 5, but they ignored his report. (Doc. No. 1 at 4). On June 6, Plaintiff repeated his request to file a PREA report to Officer Wallace. (Id.). Plaintiff was not relocated from his cell at that point, but he alleges that Lt. Graves told Sgt. Hayes that Graves would "clear room for [Plaintiff] inside of

---

[2] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S.C. § 30301 et seq.

3

medical." (Id. at 12). However, Sgt. Hayes left and Lt. Graves never came to escort Plaintiff to medical. (Id.). Plaintiff was thus left another night with his cellmate, who sexually assaulted him a second time. (Id.) Plaintiff claims that "[t]hey may not could have stopped [the first] assault but definitely the [second] if they had followed policies." (Id. at 5). After the second assault, Plaintiff spent the night in the medical unit, where he received an "anatomical" exam but no other medical treatment or tests. (Id. at 7, 12).

Plaintiff was escorted back to his cell the next morning. (Id. at 13). His cellmate had been moved, but no investigation of his cell or cellmate was conducted. (Id.). Plaintiff and his cellmate were not designated as incompatibles; they later occupied the same residential unit for approximately one month, apparently without incident. (Id.).

Plaintiff sues CoreCivic of America ("CoreCivic"), claiming that his Eighth and Fourteenth Amendment rights were violated and seeking an award of damages. (Id. at 2–3, 5). He alleges that, as a result of his prison grievances related to the assaults, individual officers named therein were either demoted, removed, or quit their jobs "within a month or so of [the] incident." (Id. at 7).

## C. Analysis

"The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)); see also Walker v. Norris, 917 F.2d 1449, 1453 (6th Cir. 1990). To state a claim for failure to protect from such violence, an inmate must plausibly allege that prison officials were deliberately indifferent "to a substantial risk of serious harm" to the inmate. Farmer, 511 U.S. at 834; Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show that the deprivation he suffered was "objectively, 'sufficiently serious,'" Farmer, supra (citations omitted), and that prison officials

were "subjectively aware of the risk" to his safety and "disregard[ed] that risk by failing to take reasonable measures to abate it." Greene, 361 F.3d at 294 (quoting Farmer, 511 U.S. at 829, 847).

The allegations clearly satisfy the objective component of Plaintiff's failure-to-protect claim. Moreover, construing those allegations in Plaintiff's favor at this initial stage, they are sufficient to allow the reasonable inference that individual TTCC officials were subjectively aware of the risk that his cellmate would again inflict serious harm if left in the cell with Plaintiff after the first sexual assault, and that those officials failed to take reasonable measures to abate the risk.

However, the Complaint does not name any prison officials as Defendants, but only Core Civic, the private corporation that manages TTCC. Although CoreCivic is a state actor for purposes of § 1983 because it performs the traditional state function of operating a prison, Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996), the corporation itself, as distinguished from its individual employees, may only be found liable for harms caused by the execution of a corporate policy or custom. O'Brien v. Michigan Dep't of Corr., 592 F. App'x 338, 341 (6th Cir. 2014); Starcher v. Corr. Med. Sys., Inc., 7 F. App'x 459, 465 (6th Cir. 2001). Plaintiff does not allege that his injuries resulted from the execution of any such policy or custom; indeed, he claims that the second assault could have been prevented "if [the individual officials] had followed policies." (Doc. No. 1 at 5). He thus fails to assert a plausible failure-to-protect claim against CoreCivic.

As to Plaintiff's claim that TTCC officials failed to interrogate or otherwise investigate his cellmate after the assaults, even if his allegations could be construed as implicating a CoreCivic policy or custom, it is a matter of prosecutorial discretion, not an inmate's constitutional right, to have an alleged prison rapist investigated, charged, or punished. Napier v. Baron, 198 F.3d 246, 1999 WL 1045169, at *1 (6th Cir. Nov. 9, 1999); see Gresham v. Granholm, No. 2:09-cv-231,

5

Case 3:23-cv-01231    Document 4    Filed 01/09/24    Page 5 of 8 PageID #: 26

2010 WL 104700, at *3 (W.D. Mich. Jan. 7, 2010) (dismissing inmate's § 1983 claim for refusal to investigate alleged assault by prison staff, because "[t]here is no federal right to an investigation (and thus no federal claim arises where the investigation is inadequate)"). Moreover, the failure to investigate or punish the former cellmate, or house him in a different unit, is not alleged to have resulted in harm to Plaintiff.

Finally, though Plaintiff claims a "denial of medical treatment" (Doc. No. 1 at 5), he has not at this time alleged sufficient facts against any proper defendant to support an Eighth Amendment claim based on inadequate medical care. Like other Eighth Amendment claims, claims of deliberate indifference to serious medical needs have "two components, one objective and the other subjective": "[t]he plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." Rhinehart v. Scutt, 894 F.3d 721, 737 (6th Cir. 2018) (citing Farmer, 511 U.S. at 834–35). Here, Plaintiff alleges that although he was taken to "medical intake where [officers] and nurses all talk[ed] to [him] and d[id] an anatomical" (Doc. No. 1 at 12), the TTCC medical staff failed to order DNA or STD tests or send him to the hospital after examining him. (Id. at 5, 7). With regard to the subjective component of a medical needs claim, generally speaking, "[a]n inmate's 'disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation.'" Rhinehart, 894 F.3d at 740 (quoting Dodson v. Wilkinson, 304 F. App'x 434, 440 (6th Cir. 2008)). Although it is conceivable in this particular context, where a medical provider conducts an examination after a sexual assault but declines to test for disease, that additional factual allegations might support a plausible claim of deliberate indifference,[3] such allegations are not contained in

---

[3] But see Hardrick v. Unknown Forrest, No. 2:21-CV-238, 2023 WL 8812912, at *8 (W.D. Mich. Nov. 6, 2023), report and recommendation adopted sub nom. Hardrick v. Forrest, 2023 WL 8805044 (W.D. Mich.

6

Case 3:23-cv-01231    Document 4    Filed 01/09/24    Page 6 of 8 PageID #: 27

the instant Complaint. Plaintiff therefore fails to state a viable claim of deliberate indifference to serious medical needs under the Eighth Amendment.

Although the Complaint as currently constituted does not state any plausible claim against a named defendant, the Court in its discretion "can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." LaFountain v. Harry, 716 F.3d 944, 951 (6th Cir. 2013). The Court will exercise that discretion in this case and allow Plaintiff an opportunity to amend in order to identify appropriate defendants and provide additional factual support for his Eighth Amendment claims.

### III. CONCLUSION

As explained above, although the Complaint is subject to dismissal for failure to state a claim on which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), the Court will allow Plaintiff to file an Amended Complaint in response to this Order within **30 DAYS** of the entry of the Order. Specifically, the Amended Complaint should identify as defendants any individuals who: (1) were personally involved with Plaintiff's reports of harm inflicted by his cellmate, with the institutional response to those reports, and/or with the provision of inadequate medical care in the aftermath of the assaults, and (2) whose acts or omissions caused or contributed to any injuries he allegedly suffered. Plaintiff should provide as much detail as he can about the involvement of any individual defendant he names, including, if possible, the date, time, and location of such involvement. If he cannot identify such defendants by first and last name, he may indicate their rank/position and any portion of their name that he knows, or he may utilize a placeholder "John Doe" designation until such identifying information can be ascertained. If he

---

Dec. 20, 2023) (rejecting deliberate indifference claim in prison sexual assault case after noting that (1) no untreated physical or mental injury was alleged to have resulted from assault, and (2) claim that victim should have been tested after potential exposure to sexually transmitted infections was undermined by failure to allege that victim in fact suffered infection).

7

desires to pursue a claim against CoreCivic, Plaintiff must identify the CoreCivic policy or custom that caused him harm.

The Clerk is **DIRECTED** to provide Plaintiff with a form for filing a civil rights complaint (Pro Se Form 14). Plaintiff is cautioned that failure to file an Amended Complaint using the provided form within 30 days (or to seek an extension of this deadline before it expires), or failure to keep the Court apprised of his current address, will result in the dismissal of this action.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE